```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF RHODE ISLAND


SANDRA B. AFOLABI,                    :
       Plaintiff,                     :
                                      :
     v.                               :      CA 07-243 ML
                                      :
MICHAEL J. ASTRUE,                    :
COMMISSIONER,                         :
SOCIAL SECURITY ADMINISTRATION,       :
       Defendant.                     :
```

**REPORT AND RECOMMENDATION**

This matter is before the Court on a request for judicial review of the decision of the Commissioner of Social Security ("the Commissioner"), denying Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), under § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g) ("the Act"). Plaintiff Sandra Afolabi ("Plaintiff") has filed a motion to remand. Defendant Michael J. Astrue ("Defendant") has filed a motion to affirm the decision of the Commissioner.

This matter has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth herein, I find that the Commissioner's decision that Plaintiff is not disabled is supported by substantial evidence in the record and is legally correct. Accordingly, based on the following analysis, I recommend that Defendant's Motion for an Order Affirming the Decision of the Commissioner (Document ("Doc.") #8) ("Motion to Affirm") be granted and that Plaintiff's Motion to Remand the Decision of the Commissioner (Doc. #7) ("Motion to Remand") be denied.

**Facts and Travel**

On January 28, 2004, Plaintiff filed applications for DIB and SSI, alleging disability since October 10, 2003, because of a herniated disc in her lower back and multiple sclerosis. (R. at

13, 43-45, 247-50)  The applications were denied initially, (R. at 28, 30-33, 251-55), and upon reconsideration, (R. at 29, 35-37, 256-59).  Plaintiff requested an administrative hearing.  (R. at 38)  An Administrative Law Judge ("ALJ") conducted a hearing on December 14, 2006, at which Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified.  (R. at 260-82)  The ALJ issued a decision on January 18, 2007, finding that Plaintiff was not disabled.  (R. at 12-20)  The Appeals Council denied Plaintiff's request for review on April 28, 2007, (R. at 4-8), thereby rendering the ALJ's decision the final decision of the Commissioner, (R. at 4).  Plaintiff thereafter filed this action for judicial review.

## Issue

The issue for determination is whether there is substantial evidence in the record to support the decision of the Commissioner that Plaintiff was not disabled within the meaning of the Act.

## Standard of Review

The Court's role in reviewing the Commissioner's decision is limited.  Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999).  Although questions of law are reviewed *de novo*, the Commissioner's findings of fact, if supported by substantial evidence in the record,[1] are conclusive.  Id. (citing 42 U.S.C. § 405(g)).  The determination of substantiality is based upon an evaluation of the record as a whole.  Id. (citing Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1999)("We

---

[1] The Supreme Court has defined substantial evidence as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217 (1938)); see also Suranie v. Sullivan, 787 F.Supp. 287, 289 (D.R.I. 1992).

must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.")(second alteration in original)).  The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner.  Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)).  "Indeed, the resolution of conflicts in the evidence is for the Commissioner, not the courts."  Id. at 31 (citing Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)(citing Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426 (1971))).

**Law**

To qualify for DIB, a claimant must meet certain insured status requirements,[3] be younger than 65 years of age, file an application for benefits, and be under a disability as defined by the Act.  See 42 U.S.C. § 423(a).  An individual is eligible to receive SSI if he is aged, blind, or disabled and meets certain income requirements.  See 42 U.S.C. § 1382(a).

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. 423(d)(1)(A).  A claimant's impairment must be of such severity that she is unable to perform her previous work or any other kind of substantial gainful employment which exists in the national economy.  See 42 U.S.C. § 423(d)(2)(A).  "An impairment or combination of impairments is not severe if it does not

---

[3] The ALJ stated that Plaintiff met the disability insured status requirements and continued to meet them through the date of the ALJ's decision.  (R. at 13, 18)

significantly limit [a claimant's] physical or mental ability to do basic work activities."[4]  20 C.F.R. §§ 404.1521(a), 416.921(a)(2008).[5]  A claimant's complaints alone cannot provide a basis for entitlement when they are not supported by medical evidence.  See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986); 20 C.F.R. § 404.1528 (2008)("Your statements alone are not enough to establish that there is a physical or mental impairment.").

The Social Security regulations prescribe a five-step inquiry for use in determining whether a claimant is disabled.  See 20 C.F.R. § 404.1520(a) (2008); see also Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S.Ct. 2287, 2291 (1987); Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).  Pursuant to that scheme, the Commissioner must determine sequentially: (1) whether the claimant is presently engaged in substantial gainful work activity; (2) whether she has a severe impairment; (3) whether her impairment meets or equals one of the Commissioner's listed

---

[4] The regulations describe "basic work activities" as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b) (2008).  Examples of these include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

Id.

[5] The Social Security Administration ("SSA") has promulgated identical sets of regulations governing eligibility for DIB and SSI.  See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120 n.1 (1st Cir. 1986).  For simplicity, the Court hereafter will cite only to one set of regulations.  See id.

impairments; (4) whether she is able to perform her past relevant work; and (5) whether she remains capable of performing any work within the economy. See 20 C.F.R. § 404.1520(b)-(g). The evaluation may be terminated at any step. See Seavey v. Barnhart, 276 F.3d at 5. "The applicant has the burden of production and proof at the first four steps of the process. If the applicant has met his or her burden at the first four steps, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the applicant can still perform." Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

### ALJ's Decision

Following the familiar sequential analysis, the ALJ in the instant case made the following findings: that Plaintiff had not engaged in substantial gainful activity since October 10, 2003; that Plaintiff's multiple sclerosis, cervical stenosis, lumbar degenerative disc disease, and depression were severe impairments but did not, either singly or in combination, meet or equal any listed impairment; that the severity of pain/symptoms and degree of incapacity alleged by Plaintiff was exaggerated and not credible; that Plaintiff had the residual functional capacity to perform the exertional and non-exertional requirements of work except for an inability to lift or carry greater than ten pounds, a need to avoid prolonged standing or walking, and a moderate limitation in maintaining attention and concentration; that Plaintiff was not capable of performing her past relevant work as a certified nurse's assistant; that Plaintiff was a younger person with a high school education but without work skills transferable to other work; that a significant number of jobs existed in the national economy which Plaintiff was capable of

performing; and that, therefore, Plaintiff was not under a "disability" as defined in the Act. (R. at 18-19)

### Error Claimed

Plaintiff alleges that because the ALJ failed to order a consultative evaluation, his residual functional capacity findings were not based on substantial evidence.

### Discussion

Plaintiff's counsel stated at the outset of the December 14, 2006, hearing that:

> although the medical record is complete as far as the outstanding records, I believe further development is warranted for the psychiatric and possibly the physical, as there ... isn't any updated thorough evaluation of either of those conditions in the record.  The last physical [consultative examination] was from two years from Dr. Morrissey [phonetic] and there hasn't been a psychiatric one.  So I'd ask Your Honor to consider that.

(R. at 263-64)(third alteration in original).  At the close of the hearing the ALJ stated that he would "take [the] request for further development under review ... [and] either arrange for such a test or, in fact, reach a decision and get it out."  (R. at 282)  Plaintiff asserts that the ALJ should have ordered such a consultative evaluation and that, as a result of this failure, his RFC findings are not supported by substantial evidence.  <u>See</u> Plaintiff's Memorandum in Support of Her Motion to Remand the Decision of the Commissioner ("Plaintiff's Mem.") at 8-9.

The Court of Appeals for the First Circuit has stated that:

> In most instances, where appellant himself fails to establish a sufficient claim of disability, the [Commissioner] need proceed no further.  Due to the non-adversarial nature of disability determination proceedings, however, the [Commissioner] has recognized that []he has certain responsibilities with regard to the development of evidence and we believe this responsibility increases in cases where the appellant is

6

>     unrepresented, where the claim itself seems on its face
>     to be substantial, where there are gaps in the evidence
>     necessary to a reasoned evaluation of the claim, and
>     where it is within the power of the administrative law
>     judge, without undue effort, to see that the gaps are
>     somewhat filled—as by ordering easily obtained further or
>     more complete reports or requesting further assistance
>     from a social worker or psychiatrist or key witness.

Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991)(quoting Currier v. Sec'y of Health, Educ. & Welfare, 612 F.2d 594, 598 (1st Cir. 1980)); see also DeBlois v. Sec'y of Health & Human Servs., 686 F.2d 76, 80 (1st Cir. 1982)(same); Mandziej v. Chater, 944 F.Supp. 121, 130 (D.N.H. 1996)(noting that reviewing court "must determine whether the [allegedly] incomplete record reveals evidentiary gaps which result in prejudice to the plaintiff" and that "[i]f the ALJ fails to fill those evidentiary gaps, and if they prejudice plaintiff's claim, remand is appropriate")(internal quotation marks omitted); 20 C.F.R. § 404.1519[6] (2008) (defining consultative examination); 20 C.F.R. § 404.1519a[7] (2008) (describing when a consultative examination is

---

[6] Section 404.1519 provides, in relevant part, that:

> A consultative examination is a physical or mental examination or test purchased for you at our request and expense from a treating source or another medical source, including a pediatrician when appropriate. The decision to purchase a consultative examination will be made on an individual case basis in accordance with the provisions of §§ 404.1519a through 404.1519f.

20 C.F.R. § 404.1519.

[7] Section 404.1519a states:

> (a)(1) *General*. The decision to purchase a consultative examination for you will be made after we have given full consideration to whether the additional information needed (e.g., clinical findings, laboratory tests, diagnosis, and prognosis) is readily available from the records of your medical sources. See § 404.1512 for the procedures we will follow to obtain evidence from your medical sources. Before

7

purchased and how it is used). The Court concludes that this is not one of the unusual cases in which the ALJ had a heightened duty to develop the record. See Currier, 612 F.2d at 598 (noting that "we do not see such responsibilities arising in run of the mill cases").

First, this is not a situation where Plaintiff was unrepresented, as was the case in Currier, 612 F.2d at 598, DeBlois, 686 F.2d at 78, and Heggarty, 947 F.2d at 997. Plaintiff was represented by counsel at the December 14, 2006, hearing. (R. at 260)  Counsel, in fact, stated that the medical

---

> purchasing a consultative examination, we will consider not only existing medical reports, but also the disability interview form containing your allegations as well as other pertinent evidence in your file.
> (2) When we purchase a consultative examination, we will use the report from the consultative examination to try to resolve a conflict or ambiguity if one exists.  We will also use a consultative examination to secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision.
> (b) *Situations requiring a consultative examination*.  A consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on your claim.  Other situations, including but not limited to the situations listed below, will normally require a consultative examination:
> (1)  The additional evidence needed is not contained in the records of your medical sources;
> (2)  The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, such as death or noncooperation of a medical source;
> (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources;
> (4)  A conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved, and we are unable to do so by recontacting your medical source; or
> (5)  There is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established.

20 C.F.R. § 404.1519a (2008).

8

record was complete as far as any outstanding records. (R. at 263-64)

Second, the ALJ made no promises regarding further development of the record, simply stating that he would take the request for further development under review. (R. at 282) By contrast, in Heggarty the ALJ stated that he would obtain records from a particular doctor, then failed to do so. See 947 F.2d at 997.

Third, with respect to a psychological or psychiatric consultative evaluation of Plaintiff, the Court can easily dispense with this issue. The record contains a Report of Contact, dated September 30, 2004, written by a Disability Determination Services ("DDS") examiner regarding a telephone conversation with Plaintiff. (R. at 78) The examiner noted:

> Call received from the claimant, ascertaining the status of her case. Explained to her I was developing her mental health impairment as she stated she experiences depression on her ADL form. Further explained that a request was submitted to have her undergo a psychiatric evaluation. Claimant informed me that she is no longer depressed, and does not want her case developed any further as to any mental health impairment. Queried her as to how her symptoms have improved. She is not in counseling or on medication. However, she has had discussions with her PCP that helped put some problems she was experiencing into perspective.

(Id.) This Magistrate Judge cannot fault the ALJ for declining to order a consultative psychiatric examination when Plaintiff herself refused one and instructed DDS not to develop her case further as to her alleged mental impairment.

Fourth, one physical consultative evaluation of Plaintiff had already been ordered. Kenneth Morrissey, M.D., examined Plaintiff at the request of DDS on September 7, 2004, and the record contains his report. (R. at 105-06)

9

Fifth, the ALJ had sufficient evidence on which to base his decision.  In addition to the report from Dr. Morrissey, the record contains office notes from Plaintiff's first neurologist, Syed Rizvi, M.D., (R. at 170-82); exhibits from the Miriam Hospital, (R. at 185-95); reports from Shields MRI and CT of Rhode Island, (R. at 167-69); and exhibits from Rhode Island Hospital, including from the Medical Clinic and Megan Callahan, M.D., in essence Plaintiff's primary care physician, the Psychiatry Department,[8] and the Neurology Clinic, (R. at 124-48, 163-66, 183-84, 196-246).  Finally, there are two Residual Functional Capacity Assessments and one Psychiatric Review Technique Form completed by DDS physicians and/or psychologists in the record.  (R. at 107-14, 116-23, 149-62)

Thus, this does not appear to be a situation where the record "reveals evidentiary gaps which [if not filled] result in prejudice to the plaintiff." Mandziej v. Chater, 944 F.Supp. at 130.  As noted previously, the ALJ had adequate evidence on which to base his decision, including reports from Plaintiff's treating sources.  The Court has reviewed the record and finds no obvious conflicts or inconsistencies in the medical evidece.  Any "gaps" in Plaintiff's treatment or medication are the result of her lack of insurance coverage at various times, (R. at 126, 134, 139, 182, 196, 210, 222, 226, 267-69, 276), or her refusal to undergo certain treatments, (R. at 142)(noting that Plaintiff "declined offer for weekly counseling & recommendation to be more active ..."); (R. at 147)("[Patient] declining weekly psychotherapy at this time but willing to continue pharmacotherapy."); (R. at 203) ("[Patient] ambivalent about [psychological] meds, unsure if they have benefitted her ....  [Patient] has declined [treatment] for

---

[8] Although one exhibit is labeled as coming from the Psychiatry Foundation of RI, Inc., the documents bear the heading "Rhode Island Hospital/Dept. of Psychiatry."  (R. at 137-48)

10

[multiple sclerosis] in past because she is not convinced the [treatments] are helpful."); (R. at 222)("[S]he refused any [multiple sclerosis] treatments as she is pathologically afraid of needles."); (R. at 224)("The patient is currently refusing medication therapies.  We discussed the use of these medication therapies in the setting of the [multiple sclerosis], as they are means of preventing disability.  She states that she may consider it if she were to worsen or become disabled."[9]); (R. at 226)("She is, at this time, refusing therapy but will reconsider if circumstances change or if her symptoms worsen."[10]).

　　　Moreover, the ALJ's RFC finding is supported by substantial evidence in the record.  The ALJ found that Plaintiff "retain[ed] the residual functional capacity for a significant range of sedentary work which avoids lifting/carrying greater than 10 pounds with a need to avoid prolonged standing or walking, as well as a 'moderate' limitation in maintaining attention and concentration."  (R. at 17)(internal citation omitted).  This is consistent with the assessments of the DDS reviewing physicians, who actually allowed for lifting and/or carrying up to twenty pounds occasionally and ten pounds frequently.  (R. at 108, 117)  Plaintiff's treating physician, Dr. Callahan, indicated that Plaintiff could lift up to ten pounds for an hour and carry five pounds for less than an hour, (R. at 165), consistent with the definition of sedentary work, see 20 C.F.R. § 404.1567(a) (2008) (defining sedentary work).[11]  The DDS physicians also noted that

---

[9] Plaintiff made this statement on May 4, 2006, (R. at 224), only seven months prior to the hearing before the ALJ.

[10] The report is dated May 11, 2006.  (R. at 226)

[11] Section 404.1567 states that:

　　Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket

11

Plaintiff could sit for about six hours in an eight-hour workday, with normal breaks, and stand and/or walk for six hours in an eight-hour workday.[12] (R. at 108, 117)  While Plaintiff complains that these reports were "too outdated to be relied on ...," Plaintiff's Mem. at 10, the Court notes that the ALJ accounted for the lapse of time between the initial and reconsideration assessments and the ALJ's decision.  He stated that:

> This assessment of residual functional capacity is somewhat consistent with the opinions of the non-examining physicians, both at the initial and reconsideration determination levels, who found that the claimant retained the residual functional capacity for a significant range of *light* work with some postural limitations, limitations on pushing/pulling leg controls and an environmental limitation (See [R. at 108-11, 117-20]) ....  Nevertheless, the undersigned concludes that the claimant is somewhat more limited than is reflected in the assessments at the initial and reconsideration determination levels, largely on the basis of additional

---

files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a) (2008).

[12] While Dr. Callahan suggested that Plaintiff could only sit for three hours and, somewhat inconsistently, stand and sit intermittently for one to two hours, Dr. Callahan also found no limitations in Plaintiff's ability to remember and carry out simple instructions and make simple work-related decisions, slight limitations in her ability to maintain attention and concentration in order to complete tasks in a timely manner and interact appropriately with co-workers and supervisors, and moderate limitations in her ability to work at a consistent pace without extraordinary supervision and respond appropriately to changes in the work routine or environment.  (R. at 165)  The ALJ included a moderate limitation in Plaintiff's ability to maintain attention and concentration and limited her to "essentially simple work tasks."  (R. at 17)  This is also consistent with the assessment of J. Stephen Clifford, Ph.D., a DDS reviewing psychologist.  (R. at 159)

> evidence submitted for the first time at the hearing level.

(R. at 17 n.9)

The "additional evidence" to which the ALJ referred, (id.), provides no basis for reaching a different conclusion.  The ALJ noted that Dr. Callahan and others stated that Plaintiff's multiple sclerosis and depression remained "stable" with conservative treatment.  (R. at 16)  Notes from the Rhode Island Hospital Psychiatry Department of February 13, 2006, indicate that Plaintiff was "not depressed."  (R. at 209)  In March, Plaintiff reported doing "OK," (R. at 216), and it was noted that her depression was stable, (id.).  Notes from May and June of 2006, within seven months of the date of the hearing, appear to indicate that Plaintiff's depression was in full remission, although she continued to experience difficulty sleeping.  (R. at 233, 235)  Plaintiff reported to the Neurology Clinic on May 4, 2006, that "she has felt stable over the past few years."  (R. at 222)  On examination, she "had 5/5 strength in all extremities.  Sensation was normal to light tou[c]h and temperature and vibration.  Coordination revealed normal rapid alternating movements finger-to-nose.  She had a normal gait.  She had 2-3+ reflexes throughout with downgoing toes bilaterally."  (R. at 223)  The record reflects that Plaintiff was on medication for pain management, although she continued to have chronic low back pain and sciatic symptoms.  (R. at 196-97, 212, 226)  On January 5, 2006, Dr. Callahan suggested that her pain may be "likely also secondary to arthritis."  (R. at 197)  Dr. Callahan indicated on May 11, 2006, that Plaintiff's mood was good and that her depression was stable, despite the fact that she was not currently in therapy.  (R. at 226, 228)

The Court finds that the ALJ did not err by declining to order any additional consultative evaluations and that his RFC assessment is supported by substantial evidence in the record. Cf. Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987)("We must affirm the [Commissioner's] [determination], even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.")(second alteration in original).  Accordingly, I do not recommend remand for further development of the record.

## Conclusion

For the reasons stated above, I find that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence in the record.  Accordingly, I recommend that Defendant's Motion to Affirm be granted and that Plaintiff's Motion to Remand be denied.


/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
September 30, 2008